IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARION FELIX | : | CIVIL ACTION |
| | : | NO. 10-4654 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GMS, ZALLIE HOLDINGS, INC, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    NOVEMBER 17, 2011

## I. INTRODUCTION

Plaintiff Marion Felix ("Plaintiff") brings this slip and fall negligence action against (1) GMS, Zallie Holdings, Inc.,[1] and (2) Canada Dry Delaware Valley Bottling Company (collectively, "Defendants").  Plaintiff alleges an injury following a fall in the frozen food section of a grocery store. Defendants asserted cross-claims against each other for contribution and/or indemnity.  On September 1, 2011, Defendant-Canada Dry moved for summary judgment, and on September 2, 2011,

---

[1]     Plaintiff's Complaint incorrectly captions GMS, Zallie Holdings, Inc. as (1) ShopRite of Knorr Street; (2) ShopRite #440; and (3) Zallie Supermarkets, Inc.

Defendant-GMS did the same.  Plaintiff opposed both, and the motions are now fully briefed and ripe for disposition.


## II.   BACKGROUND[2]

This suit relates to Plaintiff's slip and fall at the ShopRite supermarket on Knorr Street in Philadelphia, Pennsylvania.  Pl.'s Compl. ¶ 10, ECF No. 1.  Plaintiff arrived at ShopRite for the purpose of grocery shopping.  She entered a store aisle, which contained a freezer section, and without noticing a puddle of liquid on the floor, slipped and fell onto her back allegedly sustaining injuries to her neck, back, arms, legs, buttocks, heels, and surrounding body parts.  Id. ¶ 17. After this fall, and while still on the ground, Plaintiff observed that the substance she slipped on was a puddle of clear liquid, approximately one-quarter to one-half inch deep with several dust particles floating on its surface.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 15, ECF 23.  Plaintiff did not know how long the liquid had been on the floor, nor could she identify the source of the liquid.  Felix Dep. 44:19-23, May 3, 2011.

ShopRite's manager, Mike Roth, responded to Plaintiff's fall.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J., Ex. I

---

[2]     In accordance with the applicable standard of review, see infra, the facts set forth in this section are viewed in the light most favorable to Plaintiff.

Mr. Roth stated that there was a Canada Dry pallet ten to twenty minutes before Plaintiff's fall in the same aisle and approximate location as Plaintiff's fall.  Roth Dep. 40:4-11, July 12, 2011. And, because of the pallet's previous location, he assumed that the liquid Plaintiff fell on came from this pallet.  Roth Dep. 39:1-4.  Nonetheless, Mr. Roth did not see any liquid leak from the pallet or see any liquid on the floor at all before responding to Plaintiff's fall.  Roth Dep. 38:20-24; 39:5-10.

Also present at the ShopRite was Plaintiff's boyfriend, Anthony Sofia.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. ¶ 11.  He was in the check-out line during the time of the incident and did not witness Plaintiff's fall.  Id. ¶ 12.  A store employee alerted Mr. Sofia to Plaintiff's fall, and he went to her aid.  Id. ¶ 13.  Mr. Sofia testified that he noticed the puddle of clear liquid when he arrived at Plaintiff's side and that there was at least one footprint in this puddle.  Sofia Dep. 51:21-52:1, July 7, 2011.  He could not testify as to when this footprint was made, however.  Sofia Dep. 52:2-5, 9-13.  Similar to Plaintiff, Mr. Sofia could not identify the cause of the liquid accumulation nor provide evidence of how long the liquid was on the floor.  Sofia Dep. 23:1-5.

Also in the store that day was an employee of Defendant-Canada Dry, Sean Early.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 23.  Mr. Early was in charge of stocking

3

Canada Dry products at the ShopRite on the day of the incident.[3]
Mr. Early states that during the course of his time at ShopRite
that day he spilled a can of Sunkist soda and cleaned up this
spill.  Early Dep. 49:21-50:14.

      Defendants separately moved for summary judgment
arguing that they had no constructive notice of the hazardous
condition in the aisle.  And, because they had no constructive
notice, they owed no duty to Plaintiff.

      For the following reasons, the Court will grant
Defendants' motions for summary judgment.


## III. DISCUSSION


    A.   <u>Legal Standard</u>

      Summary judgment is appropriate if there are no genuine
issues of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion
for summary judgment will not be defeated by 'the mere existence'
of some disputed facts, but will be denied when there is a
genuine issue of material fact."  <u>Am Eagle Outfitters v. Lyle &</u>

---

[3]   Mr. Early's testimony is somewhat contradictory.  At
first he states that he could not recall if he was working for
Canada Dry stocking that day, but then does state that he was
stocking for Canada Dry.  Early Dep. 25:9-13, July 12, 2011.
Given his recollection of events before and after Plaintiff's
fall, it seems clear that Mr. Early was stocking the ShopRite on
the day of Plaintiff's fall.  Early Dep. 25:20-24.

Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.   Application

Defendants move for summary judgment.  Both argue that the record is insufficient to show constructive notice of the

hazardous condition[4] that caused Plaintiff's fall, as required under Pennsylvania law.

### 1.   Negligence and Premises Liability

Under Pennsylvania law,[5] a claim for negligence requires proof of four elements:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law).  The sole issue at this stage of the proceedings is whether, and to what extent, Defendants owed a duty to Plaintiff.

### a.   Duty of care: possessor of land

Defendant-GMS, as owner and operator of the ShopRite, was the possessor of the land on which Plaintiff allegedly sustained injuries.  Pennsylvania courts have adopted the

---

[4]   The Court shall refer to the hazardous condition here generally as a spill for simplicity sake, as it is unclear from the record whether the liquid accumulation was from a spill or some other source.

[5]   Pennsylvania law applies in this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938).  Plaintiff is a citizen of Pennsylvania and Defendants are citizens of New Jersey.  Pl.'s Compl. ¶ 2.

Restatement (Second) approach to determining the duty owed by a possessor of land to a person on its land.  See Kirschbaum v. WRGSB Assocs., 243 F.3d 145, 152 (3d Cir. 2001) (citing Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983)).  Under this approach, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor [sic], licensee, or invitee." Carrender, 469 A.2d at 123.

During the time that Plaintiff was shopping at ShopRite, she was an "invitee." See Restatement (Second) of Torts § 332 (defining an "invitee" to include "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land").  "Possessors of land owe a duty to protect invitees from foreseeable harm." Carrender, 469 A.2d at 123.  The Restatement clarifies the possessor owes a duty only when the possessor "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee." Restatement (Second) of Torts § 343.  In other words, the possessor of the land must have "'actual or constructive notice'" of the dangerous condition. Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 723 (Pa. Super. Ct. 1997) (quoting Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 598 (Pa. 1980)).

b.   <u>Duty of care: independent contractor</u>

Neither party presents argument as to what duty Defendant-Canada Dry owed to Plaintiff while its employee worked at ShopRite.  To be sure, to the extent Defendant-Canada Dry caused the hazardous condition, it would owe a duty of reasonable care.  <u>See</u> <u>Estate of Swift</u>, 690 A.2d at 722.  The question becomes, however, whether it should also have a duty under premises liability.[6]  Nonetheless, the Court finds that resolution of this issue is not dispositive in this case.  Even if the Court assumes that Defendant-Canada Dry can be held to owe the same duty as Defendant-GMS to Plaintiff, summary judgment is still appropriate.[7]

---

[6]    Indeed, Defendant-Canada Dry in its motion for summary judgment seems to concede that it could owe a duty to Plaintiff if Plaintiff could show notice of a hazardous condition.  Def.-Canada Dry's Mot. for Summ. J. ¶ 30, ECF 19.

[7]    It seems Defendant-Canada Dry could be considered an independent contractor for purposes of imposing a duty.  The Pennsylvania Supreme Court adopted section 383 of the Restatement (Second), which states:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability . . . for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

Restatement (Second) of Torts § 383; <u>see</u> <u>Felger v. Duquesne Light Co.</u>, 273 A.2d 738, 741-42 (Pa. 1971) (adopting § 383 and holding that "because Duquesne Light had an easement and was required to maintain the pole, it should be held to the same liability as a possessor in this case").  The commentary to the Restatement clarifies that "[o]ne acting on behalf of the possessor may do so as . . . . an independent contractor."  Restatement (Second)

In sum, Defendants owed a duty of care to Plaintiff, who was a business invitee on Defendant-GMS's land. Defendants only owed such a duty to Plaintiff, however, to the extent that they had "actual or constructive notice" of a dangerous condition on the land.

c.   Notice

In this case, there is insufficient evidence that Defendants either caused the dangerous condition or had actual notice of the dangerous condition.[8]  Summary judgment thus turns on the issue of constructive notice.  Courts rely on a multitude

_____

Torts § 383 cmt. a.  Thus, if any duty is owed by Defendant-GMS, Defendant-Canada Dry will be held to the same standard because Defendant-Canada Dry acted on behalf of Defendant-GMS as an independent contractor when stocking products for sale by Defendant-GMS.

[8]    Plaintiff argues that Defendant-Canada Dry caused the dangerous condition.  See Pl.'s Br. in Resp. to Def.-Canada Dry's Mot. for Summ. J. 14-16, ECF 22.  The evidence for this argument is two fold.  First, Canada Dry was working in the aisle where Plaintiff fell and had a pallet in that aisle.  Id. at 15. Therefore, as Plaintiff's argument goes, it was the pallet that caused the liquid to be on the floor.  Id.  Second, Plaintiff attempts to bolster this argument with the deposition testimony of ShopRite manager Mike Roth.  Mr. Roth testified that it was his belief that Defendant-Canada Dry caused the spill.  Roth Dep. 37:7-12.  Mr. Roth also testified, however, that this belief was an assumption based upon the fact that Defendant-Canada Dry had a pallet in the same aisle some ten to twenty minutes before Plaintiff's fall.  Roth Dep. 39:1-4.  The Court finds this scant evidence insufficient for a reasonable jury to conclude that Canada Dry caused the spill.  There is no evidence that Defendant-Canada Dry's pallet was leaking, or even capable of producing a clear liquid.  Without more, the jury would be left to guesswork as to the cause of the spill.

of factors to determine constructive notice, including: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." Hagan v. Caldor Dep't Stores, Inc., No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991).

"[O]ne of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even "by the exercise of reasonable care," would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard. Restatement (Second) of Torts § 343.

Normally, the "evaluation of these factors is within the province of the jury." Hagan, 1991 WL 8429, at *4. Nonetheless, where the evidence adduced requires the jury to resort to "conjecture, guess or suspicion," the determination must be made by the Court. Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (Pa. 1952).

10

3.   <u>Constructive Notice: Sufficiency of the Evidence</u>

Plaintiff here presented evidence of the location of the spill, the duration of the liquid on the floor, and Defendant-GMS's hazard monitoring procedures.

a.   <u>Location of the spill</u>

It is undisputed that the spill occurred at the end of the freezer aisle.  <u>See</u> Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J., Ex. I (stating that spill occurred in front end of aisle).  The location of the spill indicates that Defendants should have discovered the spill with reasonable diligence in a relatively short period of time; in other words, the duration of the spill required to put Defendants on constructive notice is more likely a matter of minutes than a matter of hours.

b.   <u>Duration of the spill</u>

Under the facts of this case, the location of the spill alone does not create a genuine issue of material fact as to whether Defendants were on constructive notice.  Sufficient evidence of the duration of the spill must also be offered.

Plaintiff points to several facts to support her assertion that the liquid Plaintiff slipped on was present for a duration sufficient to provide Defendants with constructive notice: (1) Defendant-Canada Dry's pallet was in the area of

Plaintiff's fall ten to twenty minutes before her fall; (2)
Defendant-Canada Dry's employee admitted to having spilled
liquid, but cleaned the spill up in the same area as Plaintiff's
fall; (3) dust was floating on the top of the liquid that caused
Plaintiff's fall; and (4) there were footprints in the liquid
that caused Plaintiff's fall.

> i.  Defendant-Canada Dry's pallet was in the
>     same location as Plaintiff's fall

Plaintiff argues Defendants had constructive notice
because there was a pallet in the same area as Plaintiff's fall
ten to twenty minutes before her fall.  See Pl.'s Br. in Resp. to
Def.-GMS's Mot. for Summ. J. 23.  In this regard, Plaintiff
relies upon the deposition testimony of store manager Mike Roth.
Mr. Roth testified that Defendant-Canada Dry's employee placed a
pallet in about the same location as Plaintiff's fall and removed
the pallet approximately ten to twenty minutes before Plaintiff's
fall.  Roth Dep. 40:4-11.  Because of this fact, Mr. Roth
testified that it was his assumption that the liquid on the floor
came from this pallet.  Roth Dep. 39:1-4.  Mr. Roth, however,
testified that he did not see any liquid when the pallet was in
place.  Roth Dep. 38:20-24, 39:5-10.  Thus, Plaintiff argues that
because the pallet and location of the spill were similar, and
the time between the pallet's removal and the fall was ten to
twenty minutes, Defendants had sufficient notice of the liquid

that caused Plaintiff's fall.  Put another way, Plaintiff asks
the Court to hold that the presence of a pallet in a similar
location as a fall some time before Plaintiff's fall, without
evidence that liquid could possibly come from the pallet, rises
above the level of speculation that such pallet was the source of
the spill.  The Court finds this argument unconvincing.

Plaintiff attempts to rely upon the transitory position
of the pallet as circumstantial evidence that Defendants had
prior notice of the spill.  In this regard, two slip and fall
cases are instructive.  In Ryan v. Super Fresh Food Mkts., Inc.,
No. 99-1047, 2000 WL 537402 (E.D. Pa. Apr. 26, 2000), the court
denied a summary judgment motion based on the plaintiff's
testimony that she neither saw nor heard a spill during the
fifteen minute conversation she had prior to falling in the same
area.  Id. at *2-3.  Thus, the hazardous condition must have
existed for more than fifteen minutes and such time was
sufficient to infer constructive notice.  Similarly, in Winters
v. Marina Dist. Dev. Co., No. 05-5937, 2007 WL 1491159 (E.D. Pa.
May 18, 2007), the court held that the defendant was on
constructive notice because before the plaintiff fell on the
spill, the plaintiff sat at a slot machine for over an hour and
did not spill a drink, nor did she see any other patron spill a
drink.  Id. at *4.  Accordingly, in that case it was reasonable

13

to infer that the spill must have been on the floor for over an hour.  Id. at *4-5.

In this case, there is no record evidence that anyone was present from the time the pallet was in the aisle to when the fall occurred.  Therefore, there is no evidence to show that a spill could not have occurred mere seconds before Plaintiff's fall.  The fact that Defendant-Canada Dry's pallet was present some time before Plaintiff's fall, without more, is insufficient to rise above mere speculation that such pallet was the cause of the spill.  Unlike, Ryan and Winters, were the courts could find enough circumstantial evidence from the presence of witnesses in the same location as the falls for many minutes, no such evidence exists here.  All that is known is that at time X, a Canada Dry pallet was present in a similar location to Plaintiff's fall, and then at time Y, approximately ten to twenty minutes later, there was a puddle of liquid upon the floor and Plaintiff slipped and fell.  There is no accounting for the interim between the pallet's placement and Plaintiff's fall to allow the Court to infer that the spill was caused by the pallet.  It is just as likely that the spill came from another source, mere seconds before Plaintiff's fall.  Therefore, the presence of Defendant-Canada Dry's pallet some time before Plaintiff's fall is insufficient to show constructive notice.

   ii. Defendant-Canada Dry's spill of Sunkist
     soda

   Plaintiff next argues that Defendant-Canada Dry's employee spilled liquid near the location of her fall and that this evidence is sufficient to defeat summary judgment.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 24.  It is not. Defendant-Canada Dry's employee stocking the ShopRite that day was Sean Early.  Id. at 23.  Mr. Early did stock the freezer aisle where Plaintiff's fall occurred.  Early Dep. 40:22-41:1-5. Mr. Early stated in his deposition that a can of Sunkist soda spilled in that aisle, and he cleaned up this spill with Windex and paper towels.  49:21 - 50:14.  Plaintiff contends that this is sufficient evidence, when coupled together with her other evidence, to defeat Defendants' summary judgment motions.  Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 24.  What Plaintiff fails to acknowledge is the uncontroverted evidence that Sunkist soda is orange in color while the liquid that caused Plaintiff's fall was clear.  Early Dep. 47:21-22; Felix Dep. 40:2-20.  The Court cannot comprehend how Mr. Early's testimony should indicate that Defendants had notice of the clear liquid on the floor. Thus, Plaintiff's argument is without merit.


   iii. Presence of dust on liquid surface

   Next, Plaintiff seems to argue that the presence of dust on the surface of the liquid is sufficient to show

constructive notice.  The Third Circuit in <u>Saldana v. Kmart
Corp.</u>, 260 F.3d 228, 235 (3d Cir. 2001), discussed and rejected a
similar argument.  In that case, the plaintiff slipped on car wax
in the aisle of a Kmart.  <u>Id.</u> at 231.  There were no witnesses
that saw the wax before the plaintiff fell.  <u>Id.</u>  Nor was there
evidence of tracking through the spill.  <u>Id.</u>  The plaintiff did
state, however, that there was a layer of dust on the surface of
the wax.  <u>Id.</u>  There, the court held that this evidence was
insufficient to show that the defendant had constructive notice.
<u>Id.</u> at 234-35.  In particular, the court stated that the
plaintiff "offered no evidence of how much dust was found, how
long it would have taken for dust to accumulate, or whether the
dust was picked up off the floor by the spreading wax or the
force of [the] fall."  <u>Id.</u> at 234.  Therefore, the court
concluded that the jury could not be left to speculate whether
the defendant had sufficient constructive notice of the spill.
<u>Id.</u> at 235.

In this case, Plaintiff testified that there were at
most seven "dust balls" the size of half a pencil eraser present
on the surface of the liquid.  Felix Dep. 41:16-42:8.  Similar to
<u>Saldana</u>, Plaintiff offers no evidence of how long it would take
for such dust to accumulate.  Also similar to <u>Saldana</u>, there is
no evidence that the dust balls were not the result of the fall
itself.  While Plaintiff here did offer some evidence of the

amount of dust, the presence of at most seven small dust balls is insufficient to give rise to more than speculation that the liquid was present for sufficient time to put Defendants on notice.[9]  Thus, the presence of dust here is insufficient to show constructive notice.

### iv.  Evidence of tracking

Finally, there is some indication that tracking in the spill occurred.  Indeed, Plaintiff's boyfriend Anthony Sofia testified that when he arrived at the scene of the incident he noticed a footprint in the liquid.  Sofia Dep. 51:21-52:1.  Mr. Sofia could not provide any evidence as to when this footprint was made, however.  Sofia Dep. 52:2-5, 9-13.  While tracking evidence may be used in conjunction with other evidence to show duration, here, there is no indication as to when this footprint was made.  Without some indication that the tracking occurred before Plaintiff fell, the jury could not discern whether this footprint was caused by another person before Plaintiff's fall, someone responding to Plaintiff's fall, or Plaintiff's fall itself.  See Craig v. Franklin Mills Assocs., L.P., 555 F. Supp. 2d 547, 552 (E.D. Pa. 2008) (Robreno, J.) (concluding that

---

[9]     Indeed, in Saldana, the evidence was that a layer of dust was on the surface of the spilled wax.  See Saldana, 260 F.3d at 231.  Here, there were seven discrete dust balls.  A layer of dust seems more likely to accumulate over a longer time than seven dust balls.

evidence of trail of soda insufficient to show duration);

Viccharelli v. Home Depot U.S.A., Inc., No. 06-4890, 2007 WL
4276657, at *3 (E.D. Pa. Dec. 4, 2007) ("[T]he presence of 'skid
marks' suggests only that something had been pushed through the
wet substance at one point in the past.  It does not suggest,
however, that the wet substance had been present for any length
of time, much less that Home Depot personnel should have noticed
it upon reasonable inspection.").  Thus, Plaintiff's argument
that the footprint in the liquid helps establish duration is
without merit.

> c.   Defendant-GMS's hazard monitoring procedures

Plaintiff also asserts that Defendant-GMS's failure to
monitor for spills is sufficient to defeat summary judgement.
Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 21.
Specifically, Plaintiff argues that Defendant-GMS did not have a
policy in place to monitor for spills at set intervals.  Id.
Moreover, there was no evidence that anyone monitored for spills
that day.  Id.  Such evidence, according to Plaintiff, is
sufficient to defeat Defendants' motions because it illustrates
Defendant-GMS's failure to use reasonable care with respect to
its duty to business invitees.  Id.

Initially, Plaintiff is incorrect that Defendants had
no procedures for hazard monitoring.  Mr. Roth testified that

18

while ShopRite did not have a regimented monitoring system, it
had several maintenance workers on the floors.  See Roth Dep.
11:1-24.  The duties of those workers included monitoring for
spills and cleaning up any hazards.  Roth Dep. 11:3-8.
Therefore, while Mr. Roth could not testify as to whether, for
certain, an employee had inspected the store at a certain time or
even anytime that day, he did testify that continuous monitoring
occurred within the store.  Regardless, Plaintiff's argument as
to whether Defendant-GMS's actions were reasonable does not
concern the Court at present.

         Indeed, Plaintiff's argument as to Defendant-GMS's lack
of hazard monitoring skips a step within the negligence
framework.  In order for Defendants to fail to exercise
reasonable care with respect to a duty, Defendants must owe a
duty in the first place.  See Read v. Sam's Club, No. 05-170,
2005 WL 2346112, at *3 (E.D. Pa. Sept. 23, 2005) (holding that
evidence of failure to conduct protective sweeps goes to issue of
breach of duty and is only relevant if plaintiff produces
evidence that a duty existed).  Defendants do not owe such a duty
unless there was sufficient constructive notice of the hazardous
condition.  Thus, the inquiry into the sufficiency of Defendant-
GMS's store policy is only relevant after establishment that
Defendant had notice of a hazardous condition.  See Craig, 555 F.
Supp. 2d at 550 ("The duration of the hazard is important because

19

if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." (quoting Restatement (Second) of Torts § 343)); Hower v. Wal-Mart Stores, Inc., No. 08-1736, 2009 WL 1688474, at *6 (E.D. Pa. 2009) ("Defendant cannot be liable for negligence by failing to identify and clean up a spill only a short time after its occurrence.").

In contrast to this reasoning, Plaintiff relies on Thakrar v. Wegman's Food Mkt., 75 Pa. D. & C. 4th 437 (Pa. Ct. C.P. 2004). In that case, the plaintiff slipped on a substance in the aisle of a supermarket. Id. at 438. The court there denied summary judgement and held that the defendant failed to abide by its policy of performing hourly sweeps of the aisles to look for spills. Id. at 442-43. More importantly, however, was the evidence that the liquid on the floor had begun to solidify, and that the substance that the plaintiff fell on was from an earlier spill that the defendant's employees had already cleaned up. Id. at 441-42. Indeed, these employees testified that they had noticed drops of the substance on the floor several hours before the plaintiff's fall, but failed to clean them up. Id. at 442.

The facts in this case stand in contrast to Thakrar. Unlike the supermarket in Thakrar, Defendant-GMS did not have a regimented hourly sweep system.  Roth. Dep. 11:1-24.  Defendant-GMS had a more flexible system where employees would look for hazardous conditions while they went about their duties.  Thus, there is inconclusive evidence that Defendant-GMS did not monitor on that day.  While it is true that the court in Thakrar considered the lack of sweeps as evidence that the defendant "should have known of the existence of the harmful condition," the court took this evidence along with the evidence that the spill had existed for several hours before the plaintiff's fall. Thakrar, 75 Pa. D. & C. 4th at 442-43.  Here, more importantly than Defendant-GMS's hazard monitoring procedures, there is no evidence that any employee saw the spill, knew the spill was there, or that the spill lasted for any duration.  Accordingly, the Court finds that Defendant-GMS's alleged lack of hazard monitoring procedures do not show constructive notice.

d.   Spoliation inference

Last, Plaintiff attempts to overcome Defendants' summary judgment motions by arguing for a spoliation inference. Pl.'s Br. in Resp. to Def.-GMS's Mot. for Summ. J. 22-23. Specifically, Plaintiff argues that Defendant-GMS had surveillance camera evidence of the incident, but this footage

21

was only after the incident occurred while Plaintiff was laying
on the ground.  Id. at 22.  Therefore, Plaintiff argues, because
there was evidence after the incident occurred, but no evidence
before the incident to show, for example, the duration of the
spill on the floor, Defendant-GMS must have destroyed or
otherwise made this evidence unavailable.  Id.  A party may be
entitled to a sanction if its adversary destroys or withholds
evidence.  See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76,
78 (3d Cir. 1994).  The Third Circuit in Schmid,[10] in the context
of a products liability case, provided the following three
factors for courts to consider when determining what sanction is
appropriate: "(1) the degree of fault of the party who altered or
destroyed the evidence; (2) the degree of prejudice suffered by
the opposing party; and (3) whether there is a lesser sanction
that will avoid substantial unfairness to the opposing party and,
where the offending party is seriously at fault, will serve to
deter such conduct by others in the future."  Id. at 79.

        In this case, Plaintiff's argument fails to get off the
starting line.  For the Court to even entertain sanctions or some
adverse inference due to spoliation there must be evidence that
Defendant-GMS actually destroyed, suppressed, or withheld

---

        [10]    The Pennsylvania Supreme Court adopted this three
factor test in Schroeder v. Commonwealth, 710 A.2d 23, 27 (Pa.
1998), in the context of denying summary judgment for the
defendant.

evidence from Plaintiff.   See Brewer v. Quaker State Oil Refining
Corp., 72 F.3d 326, 334 (3d Cir. 1995) ("[I]t must appear that
there has been an actual suppression or withholding of the
evidence.   No unfavorable inference arises when the circumstances
indicate that the document or article in question has been lost
or accidentally destroyed, or where the failure to produce it is
otherwise properly accounted for.").   Plaintiff has not put forth
evidence that Defendant-GMS destroyed, altered, or otherwise
withheld surveillance evidence of the incident.

Plaintiff argues that because there was video of the
incident after she fell, there must have been video of the same
location before the fall.   Therefore, as no such video was
produced, Defendant-GMS must have destroyed, altered, or withheld
this evidence.   Plaintiff's argument is unavailing.   There is no
evidence that footage before Plaintiff's fall existed.   As Mr.
Roth's testimony explains, while ShopRite does have video cameras
in the store, some are stationary and some are not.   Roth Dep.
53:3-15.   Plaintiff has not provided evidence that the camera
that captured Plaintiff after she fell was stationary and thus
even capable of showing the floor before Plaintiff's fall.   What
is more, Mr. Roth indicated that the best person to contact would
be a representative from the ShopRite loss prevention department.
Roth Dep. 59:15-20; 63:8-16.   There is no evidence that Plaintiff
attempted to contact such person.

23

Thus, Plaintiff asks the Court to simply infer from the fact that a video was not produced that Defendants must have been at fault for this non-production.  The Court will not make such an inference.  Indeed, in cases that have addressed a spoliation inference, there was at least some evidence of actual destruction or non-compliance with a Court order to produce evidence.  See, e.g., Schmid, 13 F.3d at 78; Howell v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996); Schroeder, 710 A.2d 23, 27 (Pa. 1998). This case is inapposite as there is no evidence that Defendant-GMS destroyed or improperly withheld evidence.  Accordingly, the Court will not grant an adverse inference due to spoliation of evidence.

### e.   Cases where no evidence of the duration of the spill was offered

At bottom, Plaintiff's evidence has shown only that a liquid substance was spilled in ShopRite, and that the spill existed for some indeterminate time before she slipped on it. There is no evidence of the duration of time that the spill existed.

Courts regularly dismiss claims supported by such scant evidence at the summary judgment stage.  See, e.g., Craig, 555 F. Supp. 2d at 554 (granting summary judgment because no evidence of duration for spill in middle of mall); Read, 2005 WL 2346112, at *4 ("[P]laintiff has failed to put forth any evidence as to the

24

origin of the spill or as to how long the spill was on the floor prior to plaintiff's accident.  These evidentiary deficiencies are fatal to plaintiff's claim under § 343 of the Restatement (Second) of Torts."); Evans v. Canteen Corp., No. 94-2381, 1995 WL 355231, at *3 (E.D. Pa. June 13, 1995) (granting summary judgment as to spilled-milk claim); Estate of Swift, 690 A.2d at 722 (affirming grant of summary judgment where evidence showed that water was spilled but not "how long the condition existed"); Myers v. Penn Traffic Co., 606 A.2d 926, 931 (Pa. Super. Ct. 1992) (affirming grant of summary judgment as to spilled-grape claim); Moultrey, 422 A.2d at 598 (affirming grant of compulsory non-suit as to spilled-cherry claim); Dimino v. Wal-Mart Stores Inc., 83 Pa. D. & C. 4th 169, 178 (Pa. Ct. C.P. 2007) (granting summary judgment as to spilled-oil claim); D'Aprile v. Rolling Hill Hosp., 28 Pa. D. & C. 4th 430, 435 (Pa. Ct. C.P. 1995) (granting summary judgment as to spilled-water claim).

Here as well, in the absence of evidence, the jury can only guess how long the hazardous condition existed before Plaintiff slipped on this condition.  Under such circumstances, the jury cannot be permitted to render a verdict based on "conjecture, guess or suspicion," and the determination must be made by the Court.  Lanni, 88 A.2d at 889.  Accordingly, the Court will grant the motions for summary judgment as to Plaintiff's negligence claim.  No genuine issue of material fact

25

exists and Defendants are entitled to judgment as a matter of law because Plaintiff failed to demonstrate that Defendants had constructive notice of the spill on which Plaintiff slipped.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' motions for summary judgment will be granted.  An appropriate Order will follow.